**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

BRETT KIMBERLIN,

               Plaintiff,

    v.

HULU, INC. *et al.*,

               Defendants.

Case No. 8:25-cv-02389

Judge Lydia Kay Griggsby

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UMBRELLA
ENTERTAINMENT PTY. LTD.'S MOTION TO DISMISS FOR LACK OF
<u>JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM</u>**

BALLARD SPAHR LLP

Chad R. Bowman (Bar No. 18305)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com

Jacquelyn A. Kapinos (Bar No. 30474)
111 S. Calvert Street
Suite 2700
Baltimore, MD 21202
Tel: (410) 528-5642
Fax: (410) 528-5650
kapinosj@ballardspahr.com

Kaitlin M. Gurney (*pro hac vice*)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 864-8585
Fax: (215) 864-8999
gurneyk@ballardspahr.com

*Counsel for Umbrella Entertainment
Pty. Ltd.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ..................................................................................... 2

I.     THE PARTIES......................................................................................................... 2

II.    PROCEDURAL HISTORY................................................................................... 3

ARGUMENT ............................................................................................................... 4

I.     UMBRELLA IS NOT SUBJECT TO PERSONAL JURISDICTION ............... 5

       A.     Maryland's Long-Arm Statute Does Not Apply to Umbrella ................. 7

       B.     Due Process Prohibits Exercising Jurisdiction Over Umbrella ............. 9

              1.     Umbrella Is Not Subject to General Personal Jurisdiction in
                     Maryland ............................................................................................ 10

              2.     Umbrella Is Not Subject to Specific Personal Jurisdiction in
                     Maryland ............................................................................................ 11

II.    THE COMPLAINT FAILS TO STATE A CLAIM AS A MATTER OF LAW .............. 12

       A.     Plaintiff Fails to Plead Facts Plausibly Alleging Actual Malice Fault
              as to Umbrella ............................................................................................ 13

              1.     Plaintiff Is Required to Plead Actual Malice Fault.................................. 14

              2.     The Amended Complaint Fails to Allege Plausible Facts
                     Establishing Actual Malice by Umbrella..................................... 15

       B.     The Individual Tort Claims Against Umbrella Also Fail ...................... 16

              1.     Plaintiff Has Not Alleged a Claim for Defamation *Per Se* ...................... 16

              2.     Plaintiff Has Not Alleged a Claim for Intentional Infliction of
                     Emotional Distress............................................................................ 17

              3.     Plaintiff Has Not Alleged a Claim for Negligence or Gross
                     Negligence ......................................................................................... 17

              4.     Plaintiff Has Not Alleged a Claim for Invasion of Privacy ...................... 18

5.    Plaintiff Has Not Alleged a Claim for Fraudulent
        Misrepresentation............................................................................................18

CONCLUSION..................................................................................................................19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arkansas Nursing Home Acquisition, LLC v. CFG Community Bank,*
  460 F. Supp. 3d 621 (D. Md. 2020) ............................................................. 2, 5, 7, 10

*Arsham v. Mayor & City Council of Baltimore,*
  85 F. Supp. 3d 841 (D. Md. 2015) ............................................................... 17

*Arvon v. Liberty Mutual Fire Insurance Co.,*
  2021 WL 3401258 (4th Cir. Aug. 4, 2021) .................................................. 18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................................... 4, 16

*Barnhart v. Paisano Publications, LLC,*
  457 F. Supp. 2d 590 (D. Md. 2006) ............................................................. 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................... 13

*Boladian v. UMG Recordings, Inc.,*
  123 F. App'x 165 (6th Cir. 2005) ................................................................ 18

*Bose Corp. v. Consumers Union,*
  466 U.S. 485 (1984) ..................................................................................... 13

*Bristol-Myers Squibb Co. v. Superior Court,*
  582 U.S. 255 (2017) ..................................................................................... 10

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ..................................................................................... 10

*Caldor Inc. v. Bowden,*
  625 A.2d 959 (Md. 1993) ............................................................................. 17

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,*
  334 F.3d 390 (4th Cir. 2003) ....................................................................... 11

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) ..................................................................................... 10

*Dring v. Sullivan,*
  423 F. Supp. 2d 540 (D. Md. 2006) ............................................................. 7, 8

*Fertel v. Davidson,*
  2013 WL 6842890 (D. Md. Dec. 18, 2013) ................................................. 6

*Food Lion Inc. v. Capital Cities/ABC, Inc.*,
   194 F.3d 505 (4th Cir. 1999) ................................................................15

*Garry v. Frederick*,
   2015 WL 795211 (D. Md. Feb. 24, 2015) .............................................6

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)..............................................................................13

*Haley Paint Co. v. E.I. Dupont De Nemours & Co.*,
   775 F. Supp. 2d 790 (D. Md. 2011) ......................................................4

*Hatfill v. N.Y. Times Co.*,
   532 F.3d 312 (4th Cir. 2008) ...............................................................15

*Hustler Mag. v. Falwell*,
   485 U.S. 46, 108 S. Ct. 876 (1988)......................................................15

*Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee*,
   456 U.S. 694 (1982)..............................................................................4

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945)...........................................................................9, 10

*Khashoggi v. NSO Group Technologies Ltd.*,
   138 F.4th 152 (4th Cir. 2025) ..............................................................11

*Kimberlin v. United States DOJ*,
   2025 WL 2732909 (D. Md. Sept. 25, 2025) .........................................14

*Kusmierz v. Napiorkowski*,
   2013 WL 709674 (D. Md. Feb. 25, 2013) .............................................6

*Lerman v. Flynt Distributing Co.*,
   745 F.2d 123 (2d Cir. 1984)..................................................................16

*Manikhi v. Mass Transit Administration*,
   758 A.2d 95 (Md. 2000) .......................................................................17

*Mayfield v. NASCAR, Inc.*,
   674 F.3d 369 (4th Cir. 2012) .......................................................4, 13, 14

*Mayor & City Council of Baltimore v. Hart*,
   395 Md. 394, 910 A.2d 463 (Md. 2006)...............................................18

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) .............................................................13

*Pasadena Boat Works, LLC v. Carolina Skiff, LLC*,
    2020 WL 4903884 (D. Md. Aug. 20, 2020) ........................................................19

*Planet Aid, Inc. v. Reveal, Center for Investigative Reporting*,
    2017 WL 2778825 (D. Md. June 26, 2017)......................................................6, 12

*Rabinowitz v. Oates*,
    955 F. Supp. 485 (D. Md. 1996) .........................................................................16

*Russell v. Krowne*,
    2009 WL 10685441 (D. Md. June 19, 2009) ........................................................6

*Ryan v. Brooks*,
    634 F.2d 726 (4th Cir. 1980) ..............................................................................16

*Schatz v. Republican State Leadership Committee*,
    669 F.3d 50 (1st Cir. 2012)..................................................................................14

*Screen v. Equifax Information Systems, LLC*,
    303 F. Supp. 2d 685 (D. Md. 2004) ......................................................................9

*Shahidullah v. Shankar*,
    2022 WL 286935 (D. Md. Jan. 31, 2022) ............................................................14

*Snyder v. Phelps*,
    562 U.S. 443 (2011)..............................................................................................13

*Tani v. Washington Post*,
    2009 WL 8652384 (D. Md. June 18, 2009) ..........................................................18

*United States v. Kimberlin*,
    898 F.2d 1262 (7th Cir. 1990) .............................................................................14

*Velencia v. Drezhlo*,
    2012 WL 6562764 (D. Md. Dec. 13, 2012)............................................................6

*Winter v. Pinkins*,
    2014 WL 5500393 (D. Md. Oct. 29, 2014) ........................................................6, 8

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) ................................................................................5

*Zinz v. Evans & Mitchell Industries*,
    324 A.2d 140 (Md. Ct. Spec. App. 1974) ..............................................................8

**Statutes**

Md. Code Ann., Cts. & Jud. Proc. §§ 6-103 ...........................................................7, 8, 9

<u>**PRELIMINARY STATEMENT**</u>

Australian independent film distributor Umbrella Entertainment Pty. Ltd. ("Umbrella") is referenced just once in the sprawling six-count Amended Complaint (ECF No. 4) filed by Plaintiff Brett Kimberlin ("Plaintiff"). That lone allegation – that Umbrella is "distributing 'The Speedway Murders' *in Australia*," Am. Compl. ¶ 20 (emphasis added) – is wholly insufficient to plausibly allege either jurisdiction or a claim against Umbrella arising from a documentary about four unsolved 1978 murders in Indiana. The Melbourne-based company does not belong in this dispute.

*First*, there is no alleged or proper basis under Maryland's Long-Arm Statute to assert jurisdiction over Umbrella here, and indeed Umbrella has no relevant contacts in Maryland sufficient to establish either general or personal jurisdiction. Maryland law and the U.S. Constitution therefore require dismissal of the claims against Umbrella pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

*Second*, Plaintiff's defamation *per se* claim and ancillary tort claims against Umbrella fail on the merits as pleaded. Plaintiff, a political activist who alleges he was wrongfully convicted of the Speedway bombings in Indiana nearly 50 years ago, is a limited-purpose public figure who fails to carry his burden at the pleading stage to plausibly allege that Umbrella made any statements with the requisite "actual malice" fault under the First Amendment. All six claims fail for this constitutional reason, as well as for the separate and independent reason that Plaintiff has not pled facts plausibly alleging elements of these torts as to Umbrella. Maryland law and the Constitution therefore both require dismissal of the Amended Complaint against Umbrella under Rule 12(b)(6) for failure to state a claim.

## FACTUAL BACKGROUND

### I.    THE PARTIES

Umbrella Entertainment Pty. Ltd. ("Umbrella"), improperly named in the Amended

Complaint as "Umbrella Home Entertainment," is an Australian independent film distributor that

curates Australian classics, cult gems, and genre-defying films.  *See* Decl. of Jeff Harrison

("Harrison Decl.") ¶¶ 1-2, attached as Ex. 1.[1]  Umbrella is a proprietary limited company

organized under the laws of Australia and is also registered to do business in New Zealand.  *Id.*

¶ 3.  It is based in Abbotsford, a suburb of Melbourne, in Victoria, Australia.[2]  *Id*. ¶ 4.

Umbrella has a total of twelve employees.  Ten employees are based at the Abbotsford

address, and two work and live in New Zealand.  *Id.* ¶ 5.  Umbrella licenses and distributes films

focused primarily in the Australian and New Zealand markets.  *Id.* ¶ 6.  Out of a total catalogue

of approximately 5,000 films, Umbrella distributes only about 200-300 films internationally.  *Id.*

¶ 8. These are old Australian library titles that have found an audience worldwide, including

"ozploitation" classics such as *Wake In Fright*.  *Id.*

As an Australian distributor, Umbrella licensed "The Speedway Murders" to stream on

Netflix Australia.  *Id.* ¶ 10.  It is available on demand through Apple Australia.  *Id.*  The film is

available on these platforms to *Australia-based viewers only* and may not be watched in the

United States.  *Id.* ¶ 13.  All Umbrella work to distribute "The Speedway Murders" occurred in

Australia.  *Id.* ¶ 11.  Umbrella has had no involvement in the international distribution or

---

[1] The Court can properly consider Harrison's declaration in assessing Umbrella's motion to dismiss for lack of personal jurisdiction.  *See, e.g.*, *Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 636 (D. Md. 2020) (Bennett, J.) (court "may resolve the [jurisdictional] issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda").

[2] The Kew address listed in the Complaint is incorrect.  Harrison Decl. ¶ 4.  The correct address for Umbrella is Unit 18, 71 Victoria Crescent, Abbotsford VIC 3067.

licensing of "The Speedway Murders," whether in the United States or elsewhere, and it does not promote viewership outside of Australia. *Id.* ¶¶ 12, 14. The company has had no personal contact with Plaintiff other than being a tag-along defendant in this lawsuit. *Id.* ¶ 15.

Umbrella has no office, owns no property, and has no employees in Maryland, or indeed anywhere else in the United States. *Id.* ¶¶ 17-21. Umbrella has never filed income taxes in the United States or had any U.S.-based bank accounts. *Id.* Umbrella's founder, Harrison, has never even visited Maryland. *Id.*

## II.    PROCEDURAL HISTORY

Plaintiff, who alleges in his case caption that he is a citizen of Maryland, filed his Complaint in the Circuit Court for Montgomery County on May 28, 2025. The case was removed on July 22, 2025, and an Amended Complaint was filed on July 23, 2025. The Amended Complaint asserts claims of defamation per se (Count I), intentional infliction of emotional distress (Count II), negligence (Count III), gross negligence (Count IV), invasion of privacy (Count V), and fraudulent misrepresentation (Count VI) against all defendants. *See generally* Am. Compl. Plaintiff seeks an excess of $50 million in compensatory and punitive damages. *Id.* ¶¶ 44, 46-47, 49, 51, 55, 59, 60, 63.

The Amended Complaint specifically references Umbrella in just one allegation: "Umbrella Home Entertainment is located at Unit 13/79-83 High Street, Kew VIC 3101 Australia which distributes films including through DVD and Blue Ray. It is currently distributing 'The Speedway Murders' in Australia and receiving revenue therefrom." *Id.* ¶ 20. Plaintiff alleges that Defendants, collectively, promoted "lies" that "Plaintiff was involved in the murder of four teenagers and another woman in Speedway, Indiana between July and October 1978." *Id.* at 3.

3

On September 16, 2025, following Umbrella and other Defendants' Notices of Intent to File a Motion and Request for Pre-Motion Conference, the Court ordered Defendants to file their motions to dismiss by October 21, 2025.  ECF No. 30.  Umbrella now timely moves to dismiss the Complaint for lack of jurisdiction under Rule 12(b)(2) and, in the alternative, for failure to state a claim under Rule 12(b)(6).

## ARGUMENT

As the Supreme Court has long recognized, the threshold requirement that a case cannot proceed against a non-resident defendant unless the defendant is subject to personal jurisdiction in the forum state "recognizes and protects an individual liberty interest."  *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982).  Thus, "[w]hen a non-resident defendant challenges a court's personal jurisdiction under Rule 12(b)(2), the judge decides the jurisdictional question, and the plaintiff has the burden of proving grounds for jurisdiction by a preponderance of the evidence."  *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 796 (D. Md. 2011) (Bennett, J.).

Alternately, to survive a motion to dismiss for failure to state a claim, a plaintiff must set forth plausible factual allegations sufficient to allege each element of the stated cause of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  These factual allegations must be sufficient to "'raise a right to relief above the speculative level.'"  *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  As such, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

The defamation *per se* and ancillary tort claims against Umbrella, which are legally untenable both on jurisdictional grounds and on their merits, cannot survive a motion to dismiss.

## I.    UMBRELLA IS NOT SUBJECT TO PERSONAL JURISDICTION.

This claim against Umbrella fails at the outset, and must be dismissed, because Umbrella is not subject to personal jurisdiction in Maryland.  To exercise personal jurisdiction over a non-resident defendant such as Umbrella, a court "must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements."  *Ark. Nursing Home Acquisition*, 460 F. Supp. 3d at 638-39 (citations omitted).  The Complaint and attached Harrison Declaration make clear that Maryland's long-arm statute does not reach Umbrella here and that asserting personal jurisdiction over the company in this case would violate due process.

Plaintiff's Amended Complaint does not contain any allegations tying Umbrella to Maryland; to the contrary, it alleges only that Umbrella is located in Australia and distributes film there.  Am. Compl. ¶ 20. As discussed below, Umbrella's *sole* connection to Maryland is that the Plaintiff who has sued it here is a Maryland resident who claims to have suffered reputational injury in his home state, which is as a matter of law insufficient.  Case law within the Fourth Circuit, including in this District, makes clear that the defendant's claim-related contacts, not the plaintiff's residence, controls the issue of personal jurisdiction.

For example, in *Young v. New Haven Advocate*, the Fourth Circuit concluded that personal jurisdiction could not be exercised over an out-of-state newspaper that published an online report about a prison in Virginia, of which plaintiff was the warden, even though plaintiff alleged that he "would feel the effects of any libel in Virginia, where he lives and works."  315 F.3d 256, 262-63 (4th Cir. 2002).  Maryland federal courts have since consistently dismissed for lack of jurisdiction defamation claims against out-of-state defendants in precisely the

circumstances presented here. *See, e.g.*, *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, 2017 WL 2778825, at *5 (D. Md. June 26, 2017) (dismissing defamation, false light, and related claims for lack of personal jurisdiction and noting that "the Court will not exercise [personal] jurisdiction over Defendants simply because [plaintiff] allegedly suffered the most injury in Maryland"); *Garry v. Frederick*, 2015 WL 795211, at *4 (D. Md. Feb. 24, 2015) (dismissing defamation claim for lack of personal jurisdiction and noting that "the propriety of jurisdiction over an out-of-state defendant depends on the defendant's own contacts with the state, not where the plaintiff feels the alleged injury") (internal marks omitted); *Winter v. Pinkins*, 2014 WL 5500393, at *3 n.3 (D. Md. Oct. 29, 2014) (dismissing defamation claim for lack of personal jurisdiction even though "Plaintiff may have a viable argument that his <u>injury</u> occurred in Maryland") (emphasis in original); *Fertel v. Davidson*, 2013 WL 6842890, at *4 (D. Md. Dec. 18, 2013) (dismissing defamation claim for lack of personal jurisdiction where "there is nothing in [defendant's] Internet posts to suggest that they were meant for a Maryland audience, as opposed to a national or even a global audience"); *Kusmierz v. Napiorkowski*, 2013 WL 709674, at *5 (D. Md. Feb. 25, 2013) (dismissing defamation claim for lack of personal jurisdiction because, even though challenged "letters discussed Plaintiff and some of her actions in Maryland, there is no indication that Defendant intended for the letters to reach any Maryland residents"); *Velencia v. Drezhlo*, 2012 WL 6562764, at *7 (D. Md. Dec. 13, 2012) (Bennett, J.) (dismissing defamation claim for lack of personal jurisdiction where "Plaintiff has not alleged that these posts originated from or were directed to the State of Maryland"); *Russell v. Krowne*, 2009 WL 10685441, at *5 (D. Md. June 19, 2009) (dismissing defamation claim for lack of personal jurisdiction and observing that "[t]o allow a court to find jurisdiction based solely on where the plaintiff feels the effect of the libel 'would always make jurisdiction appropriate in a

plaintiff's home state, for the plaintiff always feels the impact of the harm there.'" (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1996))); *Dring v. Sullivan*, 423 F. Supp. 2d 540, 547 (D. Md. 2006) (dismissing defamation claim for lack of personal jurisdiction and noting that "[t]o subject a defendant to personal jurisdiction, the defendant must have acted with the manifest intent of targeting Marylanders") (internal marks omitted).

As it was in each of those cases, the Court should dismiss Defendant Umbrella from this lawsuit for lack of personal jurisdiction.  Umbrella is not subject to Maryland's long-arm statute, and it would violate due process to exercise personal jurisdiction over the company in these circumstances.

A.    **Maryland's Long-Arm Statute Does Not Apply to Umbrella.**

"To satisfy the first prong" of the personal jurisdiction test, "a plaintiff must identify a provision in the Maryland long-arm statute that authorizes jurisdiction." *Ark. Nursing Home Acquisition*, 460 F. Supp. 3d at 639.  Plaintiff did not identify any long-arm statute provision warranting jurisdiction. *Id.*  Dismissal is appropriate on this basis alone.

But even if Plaintiff had claimed that a provision warranted the Court's jurisdiction here, none of the provisions of the statute reach Umbrella. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(3)-(4).  A court may exercise jurisdiction under this section over a defendant who, per subsection 3, "[c]auses tortious injury in the State by an act or omission in the State," or, per subsection 4, "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives any substantial revenue from goods, food, services, or manufactured products used or consumed in the State." *Id.* §§ 6-103(b)(3)-(4).

Neither subsection (3) nor (4) applies in this case, as another Court in this District made clear in *Dring,* a defamation action in which a Maryland resident sued an out-of-state defendant for sending an allegedly defamatory email from New Jersey to a distribution list that included Maryland recipients.  The court dismissed the complaint for failure to satisfy Maryland's long-arm statute, concluding that subsection (3) did not apply because "there [was] no evidence that Defendant sent the e-mail in question from Maryland," and concluding that subsection (4) did not apply because the defendant had not engaged in a "persistent course of conduct" in Maryland, despite participating as a referee in an annual martial arts competition in Maryland. *Dring*, 423 F. Supp. 2d at 546-47.  In other words, that defendant had more contact with Maryland *each year* than Umbrella has ever had with the state, *see* Harrison Decl. ¶¶ 13-15, 18-22, and personal jurisdiction was deemed lacking as a matter of law.

Indeed, as to subsection (3), the "act" giving rise to a defamation cause of action asserted in Maryland occurs where the alleged defamation originated, not where it happened to be read. *See Zinz v. Evans & Mitchell Indus.*, 324 A.2d 140, 144 (Md. Ct. Spec. App. 1974) (allegedly defamatory letter mailed from Georgia to Maryland did not subject defendant to jurisdiction under subsection (3)); *see also Winter*, 2014 WL 5500393, at *3 (for purposes of long-arm statute, "[h]armful speech <u>occurs</u> in the state where the speech originates") (emphasis in original).  Here, Plaintiff alleges that Umbrella distributed "The Speedway Murders" in Australia.  Amend. Compl. ¶ 20.  This act indisputably originated from outside of Maryland, as is even alleged by Plaintiff.  *See* Harrison Decl. ¶¶ 10-13.

The same is true for subsection (4) of the long-arm statute.  Even assuming *arguendo* that Umbrella could properly be deemed to have "cause[d] a tortious injury in [Maryland] . . . by an act or omission outside [Maryland]," jurisdiction does not exist over Umbrella because the

company does not "regularly" solicit business in Maryland, engage in a "persistent course of conduct" in Maryland, or "derive[] substantial revenue from goods or services consumed in Maryland." *See* Harrison Decl. ¶¶ 13-15, 18-22; Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(3)-(4). For jurisdiction to arise under subsection (4), a defendant's contacts with Maryland must "be extensive, continuous and systematic." *Screen v. Equifax Info. Sys., LLC*, 303 F. Supp. 2d 685, 689 (D. Md. 2004) (citation omitted). Umbrella has <u>no</u> relevant business contacts with Maryland, and personal jurisdiction therefore cannot arise under subsection (4).

Because Maryland's long-arm statute is not alleged to extend to Umbrella, and an examination of the statute makes clear it does not, the Court should dismiss the Amended Complaint as to Umbrella for lack of personal jurisdiction.

### B. Due Process Prohibits Exercising Jurisdiction Over Umbrella.

Even if the Court were to interpret the Maryland long-arm statute to reach Umbrella, the Amended Complaint still must be dismissed for the independent reason that exercising personal jurisdiction here would not comport with constitutional due process requirements, the second prong of the jurisdictional analysis. For a non-resident defendant like Umbrella, due process requires "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal marks omitted). This "minimum contacts" analysis rests on the number and relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.* Umbrella clearly lacks such minimum contacts with Maryland.

1.       **Umbrella Is Not Subject to General Personal Jurisdiction in Maryland.**

As this Court has explained, there are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Ark. Nursing Home Acquisition*, 460 F. Supp. 3d at 639 (citations omitted). This Court lacks general jurisdiction over Umbrella. The Court properly exercises general jurisdiction over a foreign defendant like Umbrella only if it is satisfied that a foreign company is "essentially at home" in this state. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Thus, the Court looks to a company's place of incorporation and its principal place of business. *Id.* at 120, 139. The Amended Complaint alleges, correctly, that Umbrella is based in Australia. Am. Compl. ¶ 20. Umbrella has no office or property in Maryland, or anywhere else in the United States. Harrison Decl. ¶¶ 18-19. It has no employees in Maryland, or anywhere else in the United States. *Id.* ¶ 20. It has no bank accounts, and it pays no taxes in Maryland or anywhere else in the United States. *Id.* ¶¶ 21-22. There is not, therefore, any basis for concluding that Umbrella is "essentially at home" in Maryland, and so the company should not be subject to general jurisdiction in the state.

Thus, to exercise personal jurisdiction consistent with due process, Plaintiff's only path would be to establish "specific jurisdiction" over Umbrella in this case, which would mean showing that Umbrella "purposefully established minimum contacts with the forum" such that "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 320). Such contacts must be related to the claim. *See Bristol-Myers Squibb Co. v. Sup. Ct.*, 582 U.S. 255, 262 (2017); *see also Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 159-60, 162 (4th Cir. 2025) (affirming dismissal of an Israel-based company that "had not intentionally

10

directed conduct at Virginia" and the claims did not arise out of conduct directed at Virginia because exercising jurisdiction would be "constitutionally unreasonable").  Plaintiff does not and cannot possibly make this showing of specific jurisdiction.

### 2.     Umbrella Is Not Subject to Specific Personal Jurisdiction in Maryland.

Plaintiff does not make any allegations connecting Umbrella to Maryland, much less any Maryland connections related to his claims.  *See generally* Am. Compl.  Umbrella's *only* connection to Maryland is that the Plaintiff who has sued it here is a Maryland resident who claims to have suffered reputational injury in his home state.  That is plainly insufficient to establish specific jurisdiction consistent with due process.

It is settled law in this Circuit that the mere posting of online content accessible to Maryland residents is *insufficient* to establish specific personal jurisdiction in Maryland.  The plaintiff must instead demonstrate that the defendant "acted with the manifest intent of targeting Marylanders."  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 400 (4th Cir. 2003) (internal marks omitted) ("[I]t is clear that, in order for [defendant's] website to bring [defendant] within the jurisdiction of the Maryland courts, the company have done something more than merely place information over the internet.").

This principle applies even where, as here, the plaintiff is a forum resident who allegedly suffered injury in the forum state.  In *Planet Aid*, for example, the district court held that California defendants were not subject to personal jurisdiction in Maryland despite publishing online podcasts and other articles accusing the plaintiff, a Maryland-based charity, of fraud.  The court reached that conclusion even though the defendants had distributed its podcasts to 364 radio stations (including 4 stations in Maryland), tweeted some of the articles and podcasts to Maryland residents, emailed Maryland residents in connection with its investigation of the

11

plaintiff, and travelled to Maryland to take photographs of the plaintiff's office building. *Planet Aid*, 2017 WL 2778825, at **5-6.

The Amended Complaint here fails to plead even the level of contact with Maryland that the court found insufficient in *Planet Aid*. Plaintiff only makes just one allegation in the Amended Complaint related to Umbrella – that Umbrella is located in Australia and distributes "The Speedway Murders" in Australia. Amend. Compl. ¶ 20. Nothing on the face of these challenged statements indicates that they were targeted to a Maryland audience or that Umbrella has related contacts with Maryland. Umbrella did not even know that Plaintiff was a Maryland resident until it was sued in this case. Harrison Decl. ¶ 17. Moreover, Umbrella does not have an office, own property, have employees, have filed taxes, or have a bank account in Maryland, or anywhere else in the United States. *Id.* ¶¶ 18-22. Plaintiff thus does not and cannot establish that Umbrella is subject to specific personal jurisdiction in Maryland.

Both because Maryland's long arm statute does not reach Umbrella, and because even if there was a statutory basis for jurisdiction it would manifestly violate due process to exercise personal jurisdiction over the company here, the Court should grant Umbrella's Rule 12(b)(2) motion and dismiss the Amended Complaint as to the company for lack of jurisdiction.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AS A MATTER OF LAW

In the alternative, if it finds jurisdiction over Umbrella, this Court should conclude that Plaintiff fails to state a viable claim against Umbrella as a matter of law. The Constitution protects the challenged statements because Plaintiff fails to allege that Umbrella published any statements at all, let alone that it did so with the "actual malice" fault that the First Amendment requires. Similarly, Plaintiff impermissibly attempts to re-plead his defamation *per se* claims as five ancillary tort claims. *See Snyder v. Phelps*, 562 U.S. 443, 458 (2011). Plaintiff fails to

allege any facts sufficient to assert these claims as to Umbrella.  *Twombly*, 550 U.S. at 555, 557.

Dismissal on these grounds is thus warranted as well.

A.    **Plaintiff Fails to Plead Facts Plausibly Alleging Actual Malice Fault as to Umbrella.**

The Amended Complaint should be dismissed as to Umbrella because Plaintiff fails to

allege any facts that, if proven, could plausibly establish that Umbrella made any allegedly false

and defamatory statements with the requisite level of fault.

For purposes of defamation claims, the First Amendment distinguishes private figures,

who are entitled to greater protection from reputational harm, from public figures – whether for

all purposes and for limited purposes related to their public profile and activities.  The latter are

individuals "who, by reason of the notoriety of their achievements or the vigor and success with

which they seek the public's attention," assume a place on the public stage and thereby both

"run[] the risk of closer public scrutiny" and achieve "access to the channels of effective

communication" to correct alleged falsehoods published about them.  *Gertz v. Robert Welch,

Inc.*, 418 U.S. 323, 342-44 (1974).  To prevail on a defamation claim, public figures must plead,

and ultimately prove, by clear and convincing evidence, that the defendant made the statement at

issue with "actual malice" fault – that is, "with knowledge that it contained a false statement, or

with reckless disregard of the truth."  *Bose Corp. v. Consumers Union*, 466 U.S. 485, 513 (1984).

Following the Supreme Court's decisions in *Iqbal* and *Twombly*, the Fourth Circuit has

recognized that, as with other elements of claims, conclusory allegations are insufficient to

adequately plead knowledge of falsity or reckless disregard for the truth.  *Mayfield*, 674 F.3d at

377 (rejecting the argument that such allegations "need only be articulated in the most general

terms"); *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("every

circuit that has considered the matter" has held that such suits fail where plaintiff has not pled

facts "sufficient to give rise to a reasonable inference of" actual malice); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 57-58 (1st Cir. 2012) (rejecting plaintiff's attempt to plead "actual-malice buzzwords" rather than facts plausibly supporting an actual malice claim). Instead, a plaintiff must plead enough facts to raise the existence of knowledge of falsity "above the speculative level." *Mayfield*, 674 F.3d at 377.

### 1.    Plaintiff Is Required to Plead Actual Malice Fault.

Plaintiff, a political activist and convicted felon, is a limited-purpose public figure. Plaintiff was convicted for the high-profile Speedway bombings, which are discussed in the challenged documentary.  He is not only known for that conviction, but he has thrust himself into the forefront of public controversies by filing over 100 lawsuits related to the bombings.  *See, e.g.*, *United States v. Kimberlin*, 898 F.2d 1262, 1264 (7th Cir. 1990) ("Kimberlin is no stranger to appellate proceedings and has demonstrated his ability to file timely notices. He has averaged two appeals per year in this court over the last decade."); *see also Kimberlin v. United States DOJ*, 2025 WL 2732909, at *1 (D. Md. Sept. 25, 2025) ("At the time of his release [form prison], Plaintiff had a book deal with Knopf Books following the 'great deal of media and political interest in Plaintiff.' While on parole, he 'worked on the book, a music project, and started a new business in international trade with Ukraine.'"); *accord Brett Kimberlin*, Wikipedia, https://en.wikipedia.org/wiki/Brett_Kimberlin (last visited Oct. 17, 2025).

Accordingly, Plaintiff is a public figure for purposes of this lawsuit.  *Shahidullah v. Shankar*, 2022 WL 286935, at *4 (D. Md. Jan. 31, 2022) ("Public figures can be either so famous or notorious that they are public figures in all contexts, or they can be limited purpose public figures in certain contexts where they have "thrust [themselves] to the forefront of particular public controversies in order to influence the resolution of the issues involved.")

(citing *Gertz*, 418 U.S. at 345, and *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 318 (4th Cir. 2008)).

A public figure plaintiff alleging any speech-based publication tort – such as Plaintiff's ancillary

tort claims – must plead the same level of "actual malice" fault.  *See Hustler Mag. v. Falwell*,

485 U.S. 46, 56, 108 S. Ct. 876, 882 (1988); *see also Food Lion Inc. v. Capital Cities/ABC, Inc.*,

194 F.3d 505, 521-22 (4th Cir. 1999) (plaintiffs may not "avoid the First Amendment limitations

on defamation claims by seeking publication damages under non-reputational tort claims, while

holding to the normal state law proof standards for these torts"*).

Plaintiff is thus required to plead with sufficient plausibility that Umbrella published the

challenged documentary with actual malice fault.  Plaintiff clearly fails to do so.

### 2.    The Amended Complaint Fails to Allege Plausible Facts Establishing Actual Malice by Umbrella.

Plaintiff does not even attempt to plead facts plausibly establishing that Umbrella

published any statements with actual malice fault.  As the Fourth Circuit has explained, actual

malice "requires much more than a failure to exercise ordinary care—it demands evidence of the

publication of a *completely* fabricated story, or of one based entirely on an unverified anonymous

telephone call; or publication where there are obvious reasons to doubt the veracity of the

informant."  *Hatfill*, 532 F.3d at 324-25 (emphasis in original) (citation omitted).  Yet Plaintiff

fails to allege any facts that could plausibly meet this standard with respect to Umbrella.

Indeed, the Amended Complaint fails to allege that Umbrella published any statements at

all, let alone that it did so with actual malice fault.  The lone paragraph in the Amended

Complaint alleging anything about Umbrella states, accurately, that it is an Australian-based

company.  Am. Compl. ¶ 20. The Fourth Circuit has acknowledged that the actual malice

standard is "a difficult one for . . . plaintiffs to meet," but it has emphasized that "in the effort to

balance private rights to protection of reputation against the First Amendment rights of writers

15

and publishers to print information on matters of interest to the public, the courts have, as they

must, favored the latter." *Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980).  The actual malice

standard is even harder to meet with respect to film distributors like Umbrella.  *See, e.g.*, *Lerman*

*v. Flynt Distrib. Co*., 745 F.2d 123, 141 (2d Cir. 1984) ("Absent are any facts demonstrating that

anyone in the defendant distributing company had a subjective awareness of probable falsity. . . .

While distributors may know something of the contents of publications that they contract to

distribute, there is ordinarily little reason for them to examine [them].")  Plaintiff has not even

attempted to carry this difficult burden at the pleading stage with respect to the foreign

distributer Umbrella, and therefore, the Court should dismiss Plaintiff's Amended Complaint for

failure to state a claim for this separate and independent reason.

### B.    The Individual Tort Claims Against Umbrella Also Fail.

In addition to failing to state a claim for the First Amendment reasons outlined above, the

Amended Complaint does not plead facts alleging Umbrella satisfies any element of his

defamation *per se* or five ancillary tort claims – intentional infliction of emotional distress

(Count II), negligence (Count III), gross negligence (Count IV), invasion of privacy (Count V),

and fraudulent misrepresentation (Count VI) – as Maryland law and federal pleading rules

require.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### 1.    Plaintiff Has Not Alleged a Claim for Defamation *Per Se*.

The basic elements of a defamation claim in Maryland are "(a) a false and defamatory

statement concerning another; (b) an unprivileged publication to a third party; (c) fault

amounting to at least negligence on the part of the publisher; and (d) either actionability of the

statement irrespective of special harm or the existence of special harm caused by the

publication." *Rabinowitz v. Oates*, 955 F. Supp. 485, 488 (D. Md. 1996).  The defamation claim

stumbles right out of the gate, because Plaintiff has not alleged any of these elements as to Umbrella, other than it distributed the documentary in Australia.  Am. Compl. ¶ 20.

### 2.    Plaintiff Has Not Alleged a Claim for Intentional Infliction of Emotional Distress.

Although Maryland recognizes the tort of intentional infliction of emotional distress, it has cautioned that "[l]iability for the tort of intentional infliction of emotional distress should be imposed sparingly, and its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Caldor Inc. v. Bowden*, 625 A.2d 959, 963 (Md. 1993) (internal marks omitted); *Arsham v. Mayor & City Council of Balt.*, 85 F. Supp. 3d 841, 849 (D. Md. 2015) ("This is not an easy claim to establish.").  A claim of intentional infliction of emotional distress has four elements: (1) intentional or reckless conduct that is (2) extreme and outrageous and is (3) causally connected to the emotional distress, which is (4) severe.  *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 112, 113 (Md. 2000).  Plaintiff has not attempted to plead facts alleging any of these elements with respect to Umbrella, and therefore cannot satisfy the heightened pleading burden associated with the claim.

### 3.    Plaintiff Has Not Alleged a Claim for Negligence or Gross Negligence.

Although negligence is *one element* of a defamation claims brought by *private figures*, Plaintiff is a limited-purpose public figure who must plead and prove actual malice fault – not negligence – for his defamation *per se* claim.  *See supra* at 13-15.  Plaintiff alleges freestanding negligence and gross negligence tort claims, contending that Defendants breached "a duty of care to accurately represent him."  Am. Compl. ¶¶ 48-51.  Where defamation is alleged, "there is no

separate claim for negligent publication." *Tani v. Wash. Post*, 2009 WL 8652384, at *2 (D. Md. June 18, 2009), *aff'd*, 352 F. App'x 792 (4th Cir 2009).[3]

### 4. Plaintiff Has Not Alleged a Claim for Invasion of Privacy.

The Amended Complaint does not specify which of the four types of invasion of privacy claims Plaintiff intends to assert, but it appears to be a claim for "unauthorized use of [Kimberlin's] identity and likeness in the film." Am. Compl. ¶ 56. The claim "is intended to protect against a person using the identity of another to advertise his business or for other commercial purposes," but Plaintiff has not alleged, as the tort requires, that there is "any special value associated with [his] likeness." *Barnhart v. Paisano Publ'ns, LLC*, 457 F. Supp. 2d 590, 596 (D. Md. 2006). Accordingly, this claim is properly dismissed for this additional reason as well.

### 5. Plaintiff Has Not Alleged a Claim for Fraudulent Misrepresentation.

Finally, Plaintiff has not alleged facts supporting a claim for fraudulent misrepresentation against Umbrella nor pled the claim with the particularity required by Fed. R. Civ. P. 9(b). *See Arvon v. Liberty Mut. Fire Ins. Co*., 2021 WL 3401258, at *4 (4th Cir. Aug. 4, 2021) ("A claim under Maryland law for fraudulent misrepresentation based on an affirmative false statement generally requires the plaintiff to show: (1) that defendant made a misrepresentation of a material

---

[3] In general, under Maryland law, "[n]egligence is any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for protection of others against unreasonable risk of harm." *Mayor & City Council of Balt. v. Hart*, 395 Md. 394, 910 A.2d 463, 472 (Md. 2006) (internal quotation marks omitted). As Plaintiff has failed to assert Umbrella had any duty, let alone that Umbrella unreasonably breached that duty, this claim should be dismissed. Indeed, as the distributor in Australia, Umbrella had no duty to investigate the underlying facts in the challenged documentary. *See, e.g.*, *Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 169 (6th Cir. 2005) (requiring distributor to screen products for defamatory content would be "onerous" and "could potentially have a chilling effect upon protected speech because retailers . . . might stop selling some categories of artistic products . . . to avoid liability").

fact which was false; (2) that its falsity was known to him; (3) that defendant made the misrepresentation for the purpose of defrauding plaintiff; (4) that plaintiff not only relied upon the misrepresentation but had the right to do so and would not have done the thing from which the damage resulted if it had not been made; and (5) that plaintiff suffered damage from defendant's misrepresentation.").  Here, again, Plaintiff has not pled any misrepresentation by Umbrella; he alleges the documentary's creative directors "used lies, deception and misrepresentations to induce him to sign the agreement allowing them to film him."  Am. Compl. ¶ 56.  A vague allegation that there was a failure to conduct "due diligence" by "other Defendants," *Id.* ¶ 57, does not satisfy the elements of the claim where a material misrepresentation is required, nor does it comport with Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake."  *Pasadena Boat Works, LLC v. Carolina Skiff, LLC*, 2020 WL 4903884, at *2 (D. Md. Aug. 20, 2020).  Therefore, Plaintiff's fraudulent misrepresentation claim – like his other tort claims – should be dismissed for this additional basis as well.

## CONCLUSION

For the foregoing reasons, Umbrella respectfully requests that the Court grant its motion, dismiss the Amended Complaint, and grant such further relief as deemed just and proper.

Dated:  October 21, 2025         Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Chad R. Bowman*
Chad R. Bowman (Bar No. 18305)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
bowmanchad@ballardspahr.com

19

Jacquelyn A. Kapinos (Bar No. 30474)
111 S. Calvert Street
Suite 2700
Baltimore, MD 21202
Tel: (410) 528-5642
kapinosj@ballardspahr.com

Kaitlin M. Gurney (*pro hac vice*)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 864-8585
gurneyk@ballardspahr.com

*Counsel for Umbrella Entertainment
Pty. Ltd.*